UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| MANUEL REYES, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. M-06-372 |
| | § | |
| WESLACO INDEPENDENT SCHOOL | § | |
| DISTRICT, *et al*, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION TO DISMISS

**I.    Introduction**

Now before this Court for consideration is Defendants' Second Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 23).  Upon consideration of Plaintiff's First Amended Original Complaint (Doc. 22), Defendants' Motion (Doc. 23), Plaintiff's Response (Doc. 29),[1] Defendants' Reply (Doc. 31), and the parties' additional briefing on the issue of qualified immunity (Docs. 33, 34, 36), in light of relevant case law, the Court has determined that Defendants' Motion should be granted in part and denied in part, for the reasons discussed below.

**II.    Background**

Plaintiff Manuel "Rudy" Reyes originally brought suit in this Court on December 28, 2006 against Defendants Weslaco ISD (the "ISD"), ISD Superintendent Robert Rivera, Buckley Sanchez, Ruben Alejandro, and ISD Board members Daniel De Los Santos, David Fox, Joe Marines, Raymond Givilanez, and Ramon Montalvo.  (Doc. 1).  Plaintiff's Original Complaint,

---

[1]  Plaintiff filed his Response on April 29, 2007 as a "Motion for Leave to File Out of Time and Subject Thereto Plaintiff's Response to Defendants' Second Motion to Dismiss Pursuant to FRCP 12(b)(6)." (Doc. 29).  As the Court entered an order on April 26, 2007 granting Plaintiff until April 30, 2007 to file his Response to Defendants' Motion, Plaintiff's Response is timely.  (Doc. 30).

although unclear, appeared to allege claims against Defendants for tortious interference and various federal and state constitutional violations.  *Id.*  On January 17, 2007, Defendants moved to dismiss Plaintiff's Original Complaint pursuant to Rule 12(b)(6).  (Doc. 3).  In response to Plaintiff's stated willingness to amend his Complaint to address the issues raised in Defendants' Motion, the Court ordered Plaintiff to replead.  (Doc. 16).  Plaintiff filed his First Amended Original Complaint on March 19, 2007.  (Doc. 22).  In it, he reasserts his allegations that he suffered various changes in his employment as a bus driver with Weslaco ISD as a result of Defendants' wrongful actions.  *Id.*  Although Plaintiff's Amended Complaint specifically states that Defendants "are NOT being sued by [Plaintiff] on the basis of a state tortious interference claim," he continues to allege various federal constitutional claims against Defendants pursuant to 42 U.S.C. § 1983.  *Id.*  Plaintiff's Amended Complaint also generally alleges that Defendants have violated the Constitution of the State of Texas.  *Id.*  Defendants now seek dismissal of Plaintiff's § 1983 claims as amended for failure to state a claim for which relief can be granted. (Doc. 23); *see* FED. R. CIV. P. 12(b)(6).[2]

## III.   Analysis

## A.   Standard of Review

Motions to dismiss for failure to state a claim are "'viewed with disfavor and rarely granted.'"  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)(quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). A district court must assume that all facts in the plaintiff's complaint are true and should not dismiss the complaint "'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Collins*, 224 F.3d at 498 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The district court should further

---

[2]  Defendants do not move to dismiss Plaintiff's state Constitutional claims.  (Doc. 23).

evaluate "'whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'"  *Collins*, 224 F.3d at 498 (quoting *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).   Dismissal is proper, however, "'if the complaint lacks an allegation regarding a required element necessary to obtain relief'" or where the plaintiff has alleged merely "'conclusory allegations or legal conclusions masquerading as factual conclusions....'"  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)(quoting 2A MOORE'S FEDERAL PRACTICE 12.07 [2.-5] at 12-91; *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)); *see also Collins*, 224 F.3d at 498.

**B.     Plaintiff's Amended Complaint**

Plaintiff's First Amended Original Complaint contains an extensive "Facts" section in which he details numerous events that occurred from the time he began his employment with Defendant Weslaco ISD in 1982 until his final termination from that employment in 2005.  (Doc. 22).  According to Plaintiff, he began working for the ISD in August 1982 as a school bus driver. Plaintiff claims that he received an "on the job injury" in September 1992 and was "arbitrarily discharged" in February 1993, upon which he was forced to file suit to regain his job.  Plaintiff alleges that he again suffered an injury at work in October 1998 and returned to his duties as a full-time bus driver in January 1999.  Plaintiff claims that ISD Transportation Director Lupe Vasquez, who is not a defendant in this case, harassed and criticized Plaintiff on four separate occasions in January and February 1999 for: (1) not operating a fully functioning bus; (2) making an unnecessary aside during a radio communication; (3) drinking coffee and "staying around the compound"; and (4) failing to turn in a bus count.  In February 1999, Plaintiff wrote a letter to ISD administrators reporting the "unjustified and arbitrary harassment" he had received. Plaintiff claims that Defendant Rivera terminated his employment as a bus driver in September 1999 "after he had been arrested (wrongfully) on April 21, 1999 for an alleged DWI offense"

and his license had been revoked.  After being cleared of the DWI charge in March 2000, Plaintiff was permitted to return to work as a "spare" bus driver in April 2000.  *Id.*

Plaintiff claims that he was again wrongfully arrested for an alleged DWI offense in July 2002 "at a time when he was experiencing a myo-cardial episode."  According to Plaintiff, he underwent open heart surgery later that month and was medically released to return to work in September 2002.  Plaintiff claims that he was then "demoted" to the position of substitute bus driver in November 2002 and that he challenged this decision through the ISD's grievance procedure.  Plaintiff alleges that in January 2003, Defendant Rivera "inaccurately wrote in a letter and instructed that [Plaintiff] had been arrested on suspicion of DWI and was ineligible to transport students for five years."  Plaintiff alleges that he was ultimately cleared of the criminal allegations and "permitted to again drive."  *Id.*

Plaintiff claims that Defendant Rivera continued his "unending pursuit" of Plaintiff in September 2004.  Apparently around this date, Plaintiff informed his wife, Norma Reyes, that he had been having an affair with a fellow female ISD bus driver and that he intended to end the relationship.  Plaintiff maintains that Ms. Reyes then informed Defendant Alejandro of the affair. After speaking with Rivera about the matter, Alejandro summoned Plaintiff and the female bus driver to a meeting.  Defendant Sanchez was also in attendance.  Plaintiff and his co-worker were allegedly given letters instructing them not to talk or associate with one another.  Plaintiff claims that he and his co-worker obeyed these instructions.  On a later date, Plaintiff asked for a leave of absence from work and was told by Alejandro and Sanchez that he had to resign or be terminated.  Plaintiff also claims that Rivera called him offensive names and demanded that he resign, which he did.  The female bus driver also resigned.  *Id.*

Plaintiff claims that he reapplied for his former position as a bus driver for the ISD in January 2005.  According to Plaintiff, he was notified in February 2005 that he had been hired to

work in Maintenance as a full-time employee with benefits and that he should report to Human Resources ("HR") to complete the necessary paperwork.  Plaintiff claims that he completed the paperwork and was exiting the HR office when he encountered Defendant Rivera, who allegedly appeared "shocked" and "angry" that Plaintiff had been re-hired.  According to Plaintiff, he then met with Defendants Rivera, Alejandro, and Sanchez.  Rivera told Plaintiff that he would allow Plaintiff to again drive a bus but that Plaintiff would be on "probation" until the end of May.  In March 2005, Plaintiff received and executed a form which stated that he was entitled as an ISD employee to health, dental, and life insurance coverage.  That same month, Sanchez allegedly informed HR that he and Alejandro had interviewed Plaintiff and two others for the position of substitute bus driver, that Plaintiff had been recommended for the position, and that Plaintiff would begin work as a substitute driver with no benefits at the end of the month.  According to Plaintiff, the ISD's HR Analyst informed Plaintiff that he was the only bus driver to ever have been denied benefits.  *Id.*

In August 2005, Plaintiff attended a mandatory "in service" meeting for members of the ISD's Transportation Department presided over by Defendant Sanchez.  At the meeting, Plaintiff raised an issue regarding the policies governing bus driver conduct and/or management of disruptive students on school buses.  According to Plaintiff, Sanchez informed him that the matter would only be discussed privately with Plaintiff.  In order to protest "being refused an answer and direction from [Sanchez]," Plaintiff signed "George Washington" to a form apparently handed out at the meeting.  Plaintiff alleges that he was then falsely accused of having signed "George Washington" to a second form.  Plaintiff claims that he received a letter from Sanchez dated August 17, 2005 notifying Plaintiff of the termination of his employment.  According to Plaintiff, the reason for his termination was the signature on the second form.  Plaintiff objected to his termination through the ISD's grievance procedure.  At each level of the

process, Plaintiff's grievance was denied.  According to Plaintiff, he later learned that the ISD Board's vote to deny his grievance had been "rigged."  Plaintiff claims that the Board was swayed by "politically powerful former employees who had also been fired by the [ISD] for undeniably drinking while operating a[n] [ISD] vehicle, and were being represented by a politically powerful lawyer who has since become a Board member."  Plaintiff alleges that these employees "threatened the Board that if they were not reinstated and [Plaintiff] fired,…then they would work to defeat the incumbent Board members, and elect their lawyer to the Board." Plaintiff further alleges that the Board "was represented by a family member of a Board member, and he advised that the threats were genuine, and that [Plaintiff] should be sacrificed for political favors."  According to Plaintiff, the Board succumbed to the threats and denied Plaintiff's grievance. *Id.*

Plaintiff's amended pleading fails to specifically connect all of the above-described changes in his employment to unconstitutional actions taken by Defendants.  However, Plaintiff generally alleges that both he and his wife, "a community activist who has actively campaigned for political candidates including Board candidates," have been "openly critical" of the qualifications and integrity of the ISD Board members, Defendant Rivera's personnel practices, and the ISD Transportation Department's policies and practices.  Plaintiff also asserts that the ISD's "pattern and practice" is "to selectively use claimed policy infractions and criminal DWI charges…as a device or excuse to punish employees held in disfavor by arbitrary administrators."  According to Plaintiff, he was re-hired in April 2000 as a "spare" bus driver "so as to distance him from any perceived local job security attached to the title of Full Time Driver" and "facilitate his termination…if he again spoke out on a matter of public interest or his wife Norma became a political problem."  With respect to his forced resignation in 2004, Plaintiff alleges that "other ISD employees who had been notoriously involved in extra-marital liaisons

and other flagrant violations of [ISD] policies and practices had not been forced to resign." Plaintiff also claims that Defendant Rivera instructed Defendants Alejandro and Sanchez to terminate Plaintiff's employment in August 2005 "out of retaliation for [Plaintiff] having spoken out on matters of general public concern and his marital relationship to Norma Reyes."  In addition, Plaintiff claims that he was denied a "fair" and "impartial" hearing when the Board decided to deny his grievance for political reasons.  Plaintiff also generally alleges that Defendants "arbitrarily and capriciously" terminated his employment.  *Id.*

Although the exact nature of Plaintiff's causes of action are unclear, the Court construes Plaintiff's amended pleading to allege the following claims pursuant to § 1983: (1) Defendants retaliated against Plaintiff by terminating his employment, causing him to resign, and/or "demoting" him for the exercise of his First Amendment rights to speak on matters of public concern and to associate with his wife; (2) Defendants deprived Plaintiff of procedural and substantive due process in violation of the Fourteenth Amendment by denying him a "fair" and "impartial" grievance hearing with respect to his final termination from employment and by "arbitrarily and capriciously" terminating his employment; and (3) Defendants deprived Plaintiff of equal protection in violation of the Fourteenth Amendment by treating similarly situated employees differently.  As noted *supra*, Plaintiff also generally claims that Defendants have violated the State Constitution.  *See id.*

## C.    Statute of Limitations

Defendants first move to dismiss Plaintiff's § 1983 claims to the extent that they are barred by the relevant statute of limitations.  (Doc. 23).  It is well-settled that federal courts look to the general statute of limitations governing personal injuries in the forum state to determine the limitations period for a claim brought under § 1983.  *Price v. City of San Antonio, Tex.*, 431

F.3d 890, 892 (5th Cir. 2005).  In Texas, the applicable statute of limitations provides that a claim must be brought "not later than two years after the day the cause of action accrues."  *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 16.003(a)(Vernon 2006).  A § 1983 claim generally accrues when a plaintiff "'knows or has reason to know of the injury which is the basis of the action.'" *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999)(quoting *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992)).

Here, Plaintiff brought suit on December 28, 2006.  (Doc. 1).  Plaintiff concedes that his amended pleading complains of a number of alleged "injuries" of which he knew or had reason to know that occurred before December 28, 2004, and therefore outside the limitations period. (Doc. 29).  However, Plaintiff appears to claim that these injuries are actionable under the "continuing violations" theory or, at the very least, may be considered as "background evidence" in support of his timely § 1983 claims.  *Id.*  The "continuing violations" theory "is equitable in nature and extends the limitations period on otherwise time barred claims only when [an] unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram v. Honeywell*, 361 F.3d 272, 279 (5th Cir. 2004).[3]  Previously in this Circuit, the theory relived a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if he could show a series of "related acts," one or more of which fell within that period.  *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997)(citing *Berry v. Bd. of Supervisors of LSU*, 715 F.2d 971, 979 (5th Cir. 1983)).  As noted by Defendants, the Supreme Court has since clarified that "discrete discriminatory acts are not actionable if time barred, even

---

[3]  Courts have most commonly applied this theory in the context of claims of employment discrimination brought under Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C. § 2000e, et seq. However, the Fifth Circuit has indicated that the theory may be available to shelter otherwise time-barred claims brought under § 1983 where those claims concern "employment practices and policies that operate to deny employees their protected rights."  *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983).  In addition, other Courts of Appeals have applied the theory to § 1983 cases.  *See O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006)(citing cases).

when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Rather, "each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* The Court indicated that "termination, failure to promote, denial of transfer, or refusal to hire" are easily identifiable "discrete acts" that foreclose application of the continuing violations theory. *Id.* at 114. It reasoned that the theory more appropriately applies in the context of employment discrimination claims that require a showing of repeated conduct, such as hostile work environment claims. *Id.* at 115.

Here, the constitutional wrongs of which Plaintiff complains concern various alleged employment decisions made by Defendants, all of which fall under the Supreme Court's definition of "discrete acts." As such, Plaintiff's claims can only be based upon those employment decisions that occurred within the limitations period. These include: (1) Plaintiff's "demotion" from full-time employment with benefits to a position as a substitute bus driver without benefits in March 2005; (2) Plaintiff's final termination from his employment as a substitute bus driver on August 17, 2005; and (3) the denial of Plaintiff's challenge to his August 2005 termination through the ISD's grievance procedure.

However, the Court agrees with Plaintiff that it may consider any alleged acts occurring outside the limitations period insofar as they are relevant to Defendants' motivation in allegedly demoting Plaintiff, terminating his employment, and/or denying his grievance. *Morgan*, 536 U.S. at 113 (indicating that prior acts may be used as "background evidence" in support of timely employment discrimination claim); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005)("relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act" giving rise to Title VII claim); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1062 (9th Cir. 2002)(court "may look to pre-limitations period events as evidence of an

unconstitutional motive" in § 1983 case).

**D.     Plaintiff's § 1983 Claims Against All Defendants**

To the extent that Plaintiff's § 1983 claims have been timely filed, Defendants next call for the dismissal of those claims against all Defendants.  (Doc. 23).  It is well-established that § 1983 provides a private right of action against persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the U.S. Constitution.  *See* 42 U.S.C § 1983; *Bauer v. Tex.*, 341 F.3d 352, 357 (5th Cir. 2003). To prevail on a § 1983 claim, the plaintiff must show that (1) the offending conduct was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right secured by the Constitution.  *Bauer*, 341 F.3d at 357.

**1.     First Amendment Retaliation**

As noted *supra*, Plaintiff's amended pleading alleges that Defendants retaliated against him for the exercise of his First Amendment rights of speech and association.  In order to establish a claim for free speech retaliation, a plaintiff must show the following: (1) he suffered an adverse employment action; (2) his speech involved a matter of public concern; (3) his interest in commenting on matters of public concern outweighed the employer's interest in promoting efficiency; and (4) his speech motivated his employer's adverse employment action. *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005)(citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)).   A retaliation claim predicated on freedom of association must satisfy the same elements with the exception of the "public concern" requirement.  *Breaux v. City of Garland*, 205 F.3d 150, 157 n. 12 (5th Cir. 2000)(citing *Boddie v. City of Columbus, Miss.*, 989 F.2d 745, 747 (5th Cir. 1993)).   In other words, a plaintiff must establish that (1) he suffered an adverse employment action; (2) his interest in "associating" outweighed the employer's interest in efficiency; and (3) his association motivated the adverse

employment action at issue. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002). An "adverse employment action" has been defined by this Circuit to include "discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Tex. Dep't of Criminal Justice*, 37 F.3d 1146, 1149 (5th Cir. 1994).

Although Defendants' Motion broadly asserts that Plaintiff "cannot maintain his constitutional claims against the [ISD] and the individual defendants" under § 1983, the Motion relies solely on the statute of limitations bar in arguing for the dismissal of Plaintiff's First Amendment retaliation claims against all the Defendants. (Doc. 23). As discussed above, Plaintiff's amended pleading complains of a demotion, termination, and grievance denial that occurred in 2005, and therefore within the limitations period. In addition, he has at least alleged that these events occurred as a result of the exercise of his First Amendment rights to speak on matters of public concern and to associate with his politically active wife. As Defendants do not assert that these events fail to constitute adverse employment actions, or that any of the other elements of Plaintiff's retaliation claims have not been satisfied, the Court finds that Plaintiff has at least stated a claim that Defendants violated his First Amendment rights.

**2.     Procedural and Substantive Due Process**

Defendants assert that Plaintiff cannot maintain his procedural and substantive due process claims against all the Defendants because he has failed to allege that Defendants deprived him of any liberty or property interest. (Doc. 23). The Court recognizes that the procedural component of the Fourteenth Amendment's due process clause "promotes fairness in government decisions '[b]y requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property.'" *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000)(quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The substantive component, on the other hand, bars certain government actions

"'regardless of the fairness of the procedures used to implement them.'"  *Breen v. Tex. A&M Univ.*, 485 F.3d 325, 332 (5th Cir. 2007)(quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998)).   Government actions violate substantive due process "'only when [they] can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'"  *Breen*, 485 F.3d at 333 (quoting *Lewis*, 523 U.S. at 847).   Regardless of whether a plaintiff seeks to invoke the protections of procedural or substantive due process, he must first identify the protected life, liberty, or property interest at issue.  *See Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)(procedural due process); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)(substantive due process).

As noted *supra*, Plaintiff's procedural and substantive due process claims appear to stem from the alleged denial of a "fair" and "impartial" grievance hearing with respect to Plaintiff's final termination from employment and the "arbitrary" and "capricious" termination of that employment.[4]   Although Plaintiff's Amended Complaint makes vague references to the deprivation of his liberty interests in violation of due process, he fails to articulate the nature of those interests.   Given the factual bases for Plaintiff's due process claims, those claims more obviously concern a property interest—that is, Plaintiff's interest in his continued employment.

A public employee such as Plaintiff has a property interest in his continued employment only where he has a legitimate claim of entitlement to it—that is, a claim which would limit the employer's ability to terminate the employment.  *Johnson v. Southwest Miss. Reg'l Med. Center*, 878 F.2d 856, 858 (5th Cir. 1989); *see also Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430 (1982)(property interest is individual entitlement which cannot be removed except "for cause").  The employee "'must have more than an abstract need or desire for'" the continued employment

---

[4]  Plaintiff's amended pleading alleges that he was "arbitrarily and capriciously terminated or separated from his employment three times…"  (Doc. 22).  However, as noted *supra*, any termination occurring before December 28, 2004 is not actionable.

and "'more than a unilateral expectation of it.'" *Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 997 (5th Cir. 1992)(quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).   A claim of entitlement to a job is determined by reference to state law.   *Johnson*, 878 F.2d at 858 (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976); *Roth*, 408 U.S. at 577).   It may be created directly by state statute, a written contract, or a mutually explicit understanding enforceable under state law as an implied contract.   *Johnson*, 878 F.2d at 858 (citing *Perry v. Sindermann*, 408 U.S. 593, 601-02 (1972)).

Here, the employment that Plaintiff lost, and therefore the employment he sought to continue, was the position of substitute bus driver for Weslaco ISD.   The Court knows of no State statutory provision that creates an entitlement to this position.   In addition, Plaintiff in effect admits that he was a "non-contract" employee.  (Doc. 22).   Under Texas law, the general rule is that "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all."   *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).   Although Plaintiff generally claims that he had an objective and reasonable expectation to remain employed, he points to no specific oral or written representations made by Defendants giving rise to such expectation.  (Doc. 22).   In other words, Plaintiff has merely alleged that he had a unilateral expectation of continued employment.   As such, the Court finds that Plaintiff has failed to identify a property interest sufficient to support his due process claims.

**3.      Equal Protection**

Recognizing that "Plaintiff appears to reference an equal protection claim," Defendants submit in a footnote to their Motion that "Plaintiff has not provided any allegations in support of that claim and, consequently, it may have been referenced in error.   In any event, it should be dismissed for failure to state a claim upon which relief can be granted under the principles set out

under Rule 12(b)(6)." (Doc. 23). In his Response to Defendants' Motion, Plaintiff claims that he "neither erred in referencing an equal protection claim, nor believes that his claim…should be dismissed," apparently because he has alleged that Defendants treated other similarly situated employees differently. (Doc. 29). In short, Plaintiff's timely equal protection claim appears to consist of his contention that Defendants demoted him and/or eventually terminated his employment in 2005 for having been charged with DWI offenses and/or engaging in an extramarital liaison whereas other "politically favored" employees who had also violated ISD policies did not suffer the same consequences. (Docs. 22, 29). Plaintiff alleges that the ISD uses DWI charges and other claimed policy infractions "as a device or excuse to punish employees held in disfavor by arbitrary administrators." (Doc. 22).[5]

Generally, a plaintiff alleging an equal protection claim pursuant to § 1983 is required to show "'that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.'" *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999)(quoting *Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)). However, the Supreme Court has also "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Shipp v. McMahon*, 234 F.3d 907, 916 (5th Cir. 2000), *overruled on other grounds by McClendon v. City of Columbia*, 305 F.3d 314, 328-29 (5th Cir. 2002). Here, Plaintiff's Amended Complaint alludes to a "class of one" equal protection claim and provides some factual allegations to support it. As such, the Court will allow the claim to remain.

**E.      Plaintiff's § 1983 Claims Against the Defendants Sued in Their Individual**

---

[5]      Plaintiff's Amended Complaint further alleges that "Raphael Caballero, an employee of the Transportation Department was arrested for DWI, and his license was suspen[ded]; yet he was not terminated…." (Doc. 22).

**Capacities**

With regard to Plaintiff's § 1983 claims against Defendants Rivera, Sanchez, Alejandro, De Los Santos, Fox, Marines, Givilanez, and Montalvo in their individual capacities, Defendants move to dismiss these claims on the grounds that these Defendants enjoy the defense of qualified immunity. (Doc. 23). More specifically, Defendants claim that Plaintiff's amended pleading fails to set forth specific facts with regard to each of the individual Defendants that, if proven, would demonstrate a constitutional deprivation. *Id.* Qualified immunity shields government officials performing discretionary functions from a plaintiff's § 1983 claims against them "'insofar as their conduct does not violate clearly established law or constitutional rights of which a reasonable person would have known.'" *Breen*, 485 F.3d at 331-32 (quoting *McClendon*, 305 F.3d at 322)). Given that the qualified immunity doctrine protects officers not only from liability, but also from defending against a lawsuit, "'questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery.'" *Jackson*, 958 F.2d at 620 (quoting *James v. Sadler*, 909 F.2d 834, 838 (5th Cir. 1990)). Therefore, the Fifth Circuit requires that a § 1983 plaintiff meet "heightened pleading requirements" where defendants raise a qualified immunity defense. *Jackson*, 958 F.2d at 620. In other words, the plaintiff may not plead conclusory allegations, but rather must set forth specific facts alleging the deprivation of a constitutional right. *Id.*; *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). In doing so, the plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).

Here, Plaintiff's amended pleading fails to reference Defendants De Los Santos, Fox, Marines, Givilanez, and Montalvo other than to generally allege that these individuals are ISD

Board members involved in denying Plaintiff's grievance in 2005, apparently in violation of due process. (Docs. 22, 29). As the Court has found that Plaintiff's due process claims are subject to dismissal on other grounds, Plaintiff may not proceed against these Defendants individually. However, with respect to Plaintiff's timely § 1983 retaliation and equal protection claims against Defendants Rivera, Sanchez, and Alejandro in their individual capacities, Plaintiff has managed to allege facts regarding these Defendants' personal involvement in the decisions to demote him to the position of substitute bus driver and eventually terminate his employment in 2005. In addition, he has alleged some facts indicating that these employment decisions were motivated by the desire to retaliate against Plaintiff for the exercise of his rights to speak on matters allegedly of public concern and/or to associate with his wife. Plaintiff has also offered some factual support with respect to his allegations that Defendants acted without a rational basis in applying ISD policies to Plaintiff, but not to other similarly situated employees, in violation of equal protection. The Court will therefore allow Plaintiff to proceed with his retaliation and equal protection claims against Defendants Rivera, Sanchez, and Alejandro in their individual capacities.

**F.     Plaintiff's § 1983 Claims Against the Defendants Sued in Their Official Capacities**

Finally, the Court notes that Defendants' Reply argues for the dismissal of Plaintiff's § 1983 claims against Defendants in their official capacities for failure to identify an official policy or custom that served as the "moving force" behind any violation of Plaintiff's constitutional rights. (Doc. 31).[6] However, Defendants' Motion fails to request dismissal of the claims against Defendants in their official capacities. (Doc. 23). Therefore, the Court will allow Plaintiff's timely § 1983 retaliation and equal protection claims against Defendants in their official

---

[6]   In addition to naming Weslaco ISD as a defendant, Plaintiff has sued Defendants Rivera, De Los Santos, Sanchez, and Alejandro in their official capacities. (Doc. 22).

capacities to remain.

## IV.    Conclusion

For the foregoing reasons, the Court **ORDERS** that Defendants' Second Motion to Dismiss (Doc. 23) is hereby **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's claims surviving dismissal are as follows: (1) Plaintiff's § 1983 retaliation and equal protection claims against Defendants Rivera, Sanchez, and Alejandro in their individual capacities arising out of the alleged employment decisions occurring in 2005 and therefore within the limitations period; (2) Plaintiff's timely § 1983 retaliation and equal protection claims against Defendant Weslaco ISD and Defendants in their official capacities; and (3) Plaintiff's claims under the Texas Constitution.  All other claims are hereby **DISMISSED**.

SO ORDERED this 30th day of August, 2007, at McAllen, Texas.

Randy Crane
United States District Judge